LEGAL SERVICES OF THE HUDSON VALLEY
By: Lara Kasper-Buckareff, Esq.
123 Grand Street
Newburgh, New York 12550
(845) 569-9110

Attorneys for Plaintiff Regina Lewis

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
REGINA LEWIS,
                       Plaintiff,

   -against-

NEWBURGH HOUSING AUTHORITY and
MARC STARLING, in his official capacity
as Executive Director of the Newburgh
Housing Authority,
                       Defendants.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

'11 CIV 3194

11 Civ. _____

ECF CASE

**COMPLAINT &
JURY DEMAND**

JUDGE KARAS

Plaintiff Regina Lewis ("Plaintiff") files this Complaint seeking declaratory and injunctive relief and monetary damages against the Newburgh Housing Authority ("the NHA") and Marc Starling ("Defendant Starling"), in his official capacity as Executive Director of the NHA (hereinafter collectively "Defendants"), and avers:

### PRELIMINARY STATEMENT

1. The Defendants violated Plaintiff's constitutional and civil rights in failing to suspend her housing choice voucher ("HCV") term and in denying her request for a further reasonable extension of her voucher term as a reasonable accommodation to her disabilities. Defendants' illegal conduct resulted in Plaintiff being unlawfully dropped from the NHA's HCV Program's waiting list and thereby terminated from the Program.

2. As a result of Plaintiff's mental and physical handicaps and disabilities (hereinafter collectively "disabilities"), Plaintiff must reside in an apartment building and neighborhood

1

that is generally free of excessive noise, gangs, violence, and drugs. When Plaintiff is experiencing physical and/or mental symptoms from her disabilities, she is unable to actively search for a suitable apartment. These two factors, both related to Plaintiff's disabilities, explain why Plaintiff needs a further reasonable extension of her HCV term so that she has time to locate and secure a suitable apartment where she can use her voucher.

3. In failing to suspend Plaintiff's voucher term and denying Plaintiff's reasonable accommodation request, Defendants breached federal regulations promulgated by the United States Department of Housing and Urban Development ("HUD") which govern HCV programs, as well as Defendants' own written policies and procedures as set forth in its Administrative Plan.

4. In addition, in denying Plaintiff's reasonable accommodation request, Defendants violated the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3604(f)(3)(B) ("FHAA"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132 ("ADA"); and Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794(a) ("Section 504"). Consequently, the manner in which Plaintiff lost her valuable property interest in her HCV violated due process as provided for and secured by the United States Constitution.

5. Plaintiff brings this action for declaratory judgment, permanent injunctive relief and monetary damages. Plaintiff is a qualified person with handicaps and disabilities as those terms are defined in the FHAA, ADA, and Section 504. This action challenges:

   a) Defendants' violation of Plaintiff's right under the FHAA to be free of unlawful discrimination in housing on the basis of handicap; and

b) Defendants' violation of Plaintiff's right under the ADA to be free of unlawful discrimination on the basis of disability in participating in and accessing the benefits of the services, programs, or activities of a public entity; and

c) Defendants' violation of Plaintiff's right under Section 504 to be free of unlawful discrimination on the basis of disability in conjunction with her ability to participate in a program for which the Defendants receive federal funding; and

d) Defendants' denial of Plaintiff's right to due process as provided for and secured by the United States Constitution by violating federal regulations promulgated by the United States Department of Housing and Urban Development ("HUD"), and the Defendants' own written policies and procedures as set forth in the NHA HCV Program Administrative Plan.

## JURISDICTION

6. This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1331.

7. The Plaintiff's claims are authorized by 42 U.S.C. §§ 1983 and 1988 and declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

8. Venue properly lies within the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) in that Plaintiff resides within the County of Orange, State of New York, and the Defendants have offices within the County of Orange, State of New York, which is within the jurisdiction of the Southern District of New York.

## PARTIES

9. Plaintiff Regina Lewis is a citizen of the United States and at all times relevant has resided in Orange County, New York.

10. The NHA contracts with HUD to administer the Housing Choice Voucher (formerly known as Section 8) Program ("Program"), and receives federal funding for administering the Program and as such is considered a public housing agency ("PHA") for the purposes of HUD regulations.

11. Defendant Marc Starling is the Executive Director of the NHA and is named as a party in his official capacity.

## CONSITUTUIONAL, STATUTORY AND REGULATORY SCHEME

### A. The Section 8 Tenant –Based Assistance Housing Choice Voucher Program

12. Under Section 8 of the United States Housing Act of 1937, Congress enacted a variety of programs to promote the goal of providing an adequate supply of decent and affordable housing to low-income families. *See* 42 U.S.C. § 1437f.

13. HUD provides funding for HCV programs, which are administered either directly by HUD or through state, regional or local housing agencies known as PHAs or public housing authorities.

14. HUD enters into annual contributions contracts ("ACC") with PHAs under which HUD agrees to make payments to PHAs to cover housing assistance payments made to private owners on behalf of low-income families who participate in a HCV program. PHAs agree to administer the program in accordance with HUD regulations and requirements.

15. The federal regulations for the HCV program are set forth at 24 C.F.R. § 982 *et seq*.

16. Under the program, an eligible family obtains a voucher from the PHA, locates a rental unit in the private market of existing housing within size and rental limits set by the PHA, and submits a request for lease approval to the PHA.

17. If the PHA approves the unit, the family executes a lease with the private owner. The owner and the PHA also execute a Housing Assistance Payments Contract, also known as a "HAP Contract."

18. Participants in the HCV program receive a rental subsidy that helps them to pay for otherwise unaffordable rental housing in the private market. The participant family pays the landlord between 30% and 40% of its adjusted monthly income as its portion of the rent.

19. On behalf of the participant and pursuant to the HAP Contract with the owner, the PHA pays the difference between the participant's portion of the rent and the total contract rent defined in the lease. This payment by the PHA is called the "Housing Assistance Payment."

20. The Housing Assistance Payment plus the participant's portion of the rent always equals the total rent for the housing unit.

21. When a participant decides to move, the participant can take the voucher and use it to rent new housing.

22. Because of an extreme shortage of affordable housing in the New York City metropolitan area, HCVs are a highly valued benefit among low-income individuals and families. A family must wait months or years on almost any program waiting list before it receives a voucher.

### B. Federal Regulations and the Section 8 Administrative Plan

23. Every PHA must administer its HCV program in accordance with its Section 8 Administrative Plan. *See* 24 C.F.R. § 982.54(c). The HCV Administrative Plan must be in

accordance with HUD regulations and requirements. *See* 24 C.F.R. § 982.54(b). "The PHA must revise the administrative plan if needed to comply with HUD requirements." *Id.*

## FACTS

24. Plaintiff suffers, and at all times relevant has suffered, from physical and mental impairments, including, but not limited to the following:

    A. Posttraumatic stress disorder,

    B. Personality disorder not otherwise specified,

    C. Tardive dyskinesia,

    D. Tachycardia, and

    E. Asthma.

25. Plaintiff's impairments substantially impair one or more major life activities, including but not limited to, learning, concentrating, thinking, communicating, working, sleeping, and interacting with others, and the operation of one or more major bodily functions, including but not limited to, neurological, brain, circulatory, and respiratory functions.

26. Plaintiff has a record of one or more of the impairments or disabilities in paragraph 24 and other impairments or disabilities, including but not limited to, other psychiatric disorders.

27. Plaintiff is regarded as having and has one or more conditions regarded by others as one or more of the impairments or disabilities in paragraph 24 and other impairments or disabilities, including but not limited to, other psychiatric disorders.

28. Plaintiff's sole source of income is Supplemental Security Income in the amount of $761.00 per month.

29. Defendants issued a HCV to Plaintiff on or about July 2, 2010 with an expiration date of September 2, 2010.

30. On or about August 18, 2010, a Request for Tenancy Approval ("RTA") was submitted to Defendants concerning Plaintiff's request for Defendants' approval to use her HCV to rent an apartment owned by Voisins of Newburgh, Inc. ("the apartment"). At the time the RTA was submitted, at least fifteen days remained on Plaintiff's voucher.

31. On or about August 31, 2010, Defendants extended Plaintiff's HCV term to October 2, 2010 upon Plaintiff's written request for an extension.

32. On or about September 28, 2010, the RTA was subsequently disapproved by the Defendants when the apartment failed a housing quality standards inspection.

33. On or about October 1, 2010, Voisins of Newburgh, Inc. also advised Defendants that it had denied Plaintiff's application for the apartment.

34. In accordance with Defendants' own written policies and procedures as set forth in the Newburgh Housing Authority HCV Administrative Plan 2010 ("Administrative Plan"), Plaintiff's HCV term should have been suspended when the RTA was submitted, and at least fifteen days should have been applied to the extended voucher term, as at least that many days remained on the voucher when the RTA was submitted. Plaintiff's HCV then should have expired on October 17, 2010 at the earliest.

35. The Defendants did not suspend Plaintiff's voucher term and illegally dropped her from the Program's waiting list, thereby terminating her from the Program, on or about October 2, 2010.

36. On or about November 2, 2010, Plaintiff, through her attorney, Lara Kasper-Buckareff, disclosed her disabilities and requested a further reasonable extension of her voucher term as a reasonable accommodation to her, so that the Program is accessible to her as a person with disabilities.

37. On or about November 3, 2010, by letter to Lara Kasper-Buckareff, Esq., Defendant Starling denied Plaintiff's reasonable accommodation request, citing the "Housing Choice Voucher (Section 8) Program Rules and Regulations."

38. The federal laws and regulations governing HUD programs and activities generally, and the HCV program specifically, provide that Defendants must not discriminate against qualified individuals with disabilities, such as Plaintiff, must reasonably accommodate such individuals' disabilities, and must modify its housing policies and practices to ensure that these policies and practices do not discriminate against such individuals.

39. According to HUD regulations governing HCV programs, "If the family needs and requests an extension of the initial voucher term as a reasonable accommodation, in accordance with part 8 of this title ["Nondiscrimination based on handicap in federally assisted programs and activities of the U.S. Department of Housing and Urban Development"], to make the program accessible to a family member who is a person with disabilities, the PHA *must* extend the voucher term *up to the term reasonably required for that purpose.*" 24 C.F.R. § 982.302 (emphasis added).

40. Part 8 of the HUD regulations provides that, "A recipient *shall* make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant with handicaps or employee with handicaps, unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program." 24 C.F.R. § 8.11(a) (emphasis added).

41. Defendants' Administrative Plan nowhere cites or otherwise mentions the HUD requirement in 24 C.F.R. § 982.302 that, upon request, the Program must extend a voucher term up to the

8

term reasonably required to make the Program accessible to a family member who is a person with disabilities.

42. In fact, Defendants' Administrative Plan violates this HUD mandate insofar as it limits reasonable accommodations, including voucher extensions, to no more than 90 days from the date of issuance of the voucher ("90 day reasonable accommodation policy"). "To ensure the integrity of the HCV Program, reasonable accommodations shall not exceed 90 days from the date of issuance of the voucher." Administrative Plan, Section 1.8. Vouchers may only be extended 30 days beyond the initial 60 day term with Defendants' "approval if extenuating circumstances for an extended period of time have affected the family's ability to find a unit within the 90 day period." Administrative Plan, Section 6.2.

43. Therefore, Defendants' denial of Plaintiff's reasonable accommodation request on the ground that granting such a request would violate the HCV laws and regulations is without merit.

44. The Program is required to make reasonable accommodations particularized to each individual's disability for as long as the accommodation is needed. As cited above, the Administrative Plan contravenes this federal mandate, and in accordance with 24 C.F.R. § 982.54(b), Defendants are obligated to revise the Administrative plan so that it complies with HUD requirements.

45. Ignoring the legality of Defendants' 90 day reasonable accommodation policy, Defendants are legally obliged under HUD regulations to modify their "housing policies and practices to ensure that these policies and practices do not discriminate, on the basis of handicap, against a qualified individual with handicaps." 24 C.F.R. § 8.33. Defendants are also so obligated under the FHAA, the ADA, Section 504, and the Administrative Plan. *See* 42 U.S.C. § 3604(f)(3)(B), 28 C.F.R. § 35.130(b)(7), 24 C.F.R. §§ 100.5(a), 100.204, and Administrative

9

Plan Section 1.5 ("The Housing Authority complies fully with all Federal, State, and local nondiscrimination laws and with the rules and regulations governing Fair Housing and Equal Opportunity in housing. . . ."). *See also* Joint Statement of HUD and the Department of Justice, "Reasonable Accommodations Under the Fair Housing Act" (2004), available at http://www.hud.gov/offices/fheo/library/huddojstatement.pdf.

46. Defendants have unlawfully discriminated against Plaintiff on the basis of her disability in refusing to modify their 90 day reasonable accommodation policy and extend her voucher term.

47. As a result of the Defendants' discriminatory conduct, Plaintiff has incurred losses and suffered emotional distress, mental anguish, humiliation, embarrassment, and inconvenience.

48. Plaintiff seeks declaratory and injunctive relief to secure her rights under the United States Constitution and relevant laws and regulations promulgated thereunder.

49. Plaintiff seeks a permanent injunction ordering the Defendants to 1) reinstate her voucher retroactive to October 2, 2010, 2) extend her voucher term up to the term reasonably required to make the Program accessible to her, as a reasonable accommodation, and 3) refrain from taking any further action denying, limiting or terminating Plaintiff's participation in the Program without due process.

50. Plaintiff seeks monetary damages for having her housing assistance terminated without due process and in violation of her constitutional rights and federal law.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Fair Housing Amendments Act of 1988 – 42 U.S.C. § 3601, *et seq.*)**

51. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 50, above.

52. Plaintiff is, and at all times relevant was, a person with a "handicap" as defined in 42 U.S.C. § 3602(h).

53. Defendants knew, or reasonably should have known, of Plaintiff's handicaps.

54. Under the FHAA, an unlawful discriminatory housing practice includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. . . ." 42 U.S.C. § 3604(f)(3)(B). *See also* 24 C.F.R. § 100.204.

55. Defendants' conduct described above, in particular refusing to grant Plaintiff's request for a further reasonable extension of her voucher term as a reasonable accommodation to her, so that the Program is accessible to her as a person with disabilities, constitutes a refusal to make a reasonable accommodation in policies, practices, or services in violation of the FHAA.

56. Plaintiff is an "aggrieved person" as defined in 42 U.S.C. § 3602(i), has been injured by the Defendants' discriminatory conduct, and has suffered damages as a result.

57. Defendants acted intentionally with malice or reckless indifference to Plaintiff's statutorily protected rights.

58. Accordingly, under 42 U.S.C. § 3613(c), Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Title II of the Americans with Disabilities Act – 42 U.S.C. § 12101, *et seq.*)

59. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 58, above.

60. Plaintiff is, and at all times relevant was, a "qualified person with a disability" as defined in 42 U.S.C. §§ 12102 and 12131 and 28 C.F.R. § 35.104.

61. Defendants knew, or reasonably should have known, of Plaintiff's disabilities.

62. A "public entity" includes state and local governments, their agencies, and their instrumentalities. *See* 42 U.S.C. § 12131(1). Defendants qualify as public entities within the meaning of 42 U.S.C. § 12131 and 28 C.F.R. § 35.104.

63. Title II of the ADA states that, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

64. Congress authorized the United States Department of Justice to promulgate regulations implementing the ADA. *See* 42 U.S.C. § 12134(a). One of these regulations provides that, "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

65. Defendants' conduct described above, in particular, refusing to grant Plaintiff's request for a further reasonable extension of her voucher term so that the Program is accessible to her as a person with disabilities, constitutes a refusal to make a reasonable modifications in policies, practices, or procedures in violation of the ADA.

66. Plaintiff has been injured by the Defendants' discriminatory conduct and has suffered damages as a result.

67. Defendants' acts or omissions were the result of discriminatory animus or ill will towards Plaintiff on the basis of her disabilities.

68. Accordingly, under 42 U.S.C. § 12133, Plaintiff is entitled to actual damages, injunctive relief, and reasonable attorneys' fees and costs.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Violation of § 504 of the Rehabilitation Act of 1973 – 29 U.S.C. § 794)

69. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 68 above.

70. Plaintiff is and at all times was a "qualified person with a disability" as defined in 29 U.S.C. § 705(20)(B).

71. Defendants knew, or reasonably should have known, of Plaintiff's disabilities.

72. Defendant NHA receives Federal financial assistance.

73. Section 504 of the Rehabilitation Act of 1973 states that, "No otherwise qualified individual with a disability in the United States… shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 20 U.S.C. § 794. *See also* 24 C.F.R. § 9.130(a).

74. The Rehabilitation Act requires that qualified disabled individuals "receive 'reasonable accommodations' that permit them to have access to and take a meaningful part in public services and public accommodations." *Powell v. National Bd. of Medical Examiners*, 364 F.3d 79, 85 (2d Cir. 2004).

75. In refusing to reasonably extend Plaintiff's HCV term, and thereby reasonably accommodate Plaintiff's disabilities, Defendants denied Plaintiff the opportunity to participate in or benefit from the Program by reason of her disabilities in contravention of Section 504.

76. Plaintiff has been injured by the Defendants' discriminatory conduct and has suffered damages as a result.

77. Accordingly, under 29 U.S.C. § 794a(a)(2) and (b), Plaintiff is entitled to compensatory damages, injunctive relief, and reasonable attorneys' fees and costs.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Violation of Due Process as Provided for and Secured by the 14th Amendment of the United States Constitution.)

### A. Federal Regulations and the Section 8 Administrative Plan

78. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 77, above.

79. Defendants' own Administrative Plan provides that, "If a family submits a Request for Tenancy Approval (RTA) during the term of the voucher, the [N]HA *will* suspend the voucher term. If the RTA is subsequently disapproved, the days remaining on the voucher at the time the RTA was submitted *will* be applied to the voucher term after the RTA was disapproved." Section 6.3 (emphasis added). *See also* 24 C.F.R. § 982.303 2(c).

80. As described above, Defendants failed to suspend Plaintiff's voucher term in accordance with its own Administrative Plan and illegally dropped her from the Program waiting list.

81. Defendants' Administrative Plan provides that, "The [Newburgh] Housing Authority complies fully with all Federal, State, and local nondiscrimination laws and with the rules and regulations governing Fair Housing and Equal Opportunity in housing. . . ." Section 1.5. *See also* 24 C.F.R. § 100.5(a).

82. According to HUD regulations governing Housing Choice Voucher programs, "If the family needs and requests an extension of the initial voucher term as a reasonable accommodation, in accordance with part 8 of this title ["Nondiscrimination based on handicap in federally assisted programs and activities of the U.S. Department of Housing and Urban Development"], to make the program accessible to a family member who is a person with disabilities, the PHA *must* extend the voucher term *up to the term reasonably required for that purpose*." 24 C.F.R. § 982.302 (emphasis added).

83. Part 8 of the HUD regulations provides that, "A recipient *shall* make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant with handicaps or employee with handicaps, unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program." 24 C.F.R. § 8.11(a) (emphasis added).

84. Part 8 the HUD regulations further provides that, "A recipient *shall* modify its housing policies and practices to ensure that these policies and practices do not discriminate, on the basis of handicap, against a qualified individual with handicaps. . . . Housing policies that the recipient can demonstrate are essential to the housing program or activity will not be regarded as discriminatory within the meaning of this section if modifications to them would result in a fundamental alteration in the nature of the program or activity or undue financial and administrative burdens." 24 C.F.R. § 8.33 (emphasis added).

85. As described above, Defendants violated HUD regulations and the Administrative Plan by refusing to reasonably accommodate Plaintiff's disabilities by denying her request for a further extension of her voucher term.

86. Defendants' actions as described above are therefore in violation of HUD regulations and the Defendants' own written policies and procedures as set forth in their Administrative Plan.

### B. Due Process under the United States Constitution

87. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 86, above.

88. Because federally subsidized housing assistance under the HCV program, like other forms of public assistance benefits, is a constitutionally-protected property interest of the recipient, it cannot be terminated without due process under the Fourteenth Amendment to the United States Constitution.

89. Defendants, under color of federal law and without due process of law, have intentionally deprived Plaintiff of a property interest protected by the United States Constitution, specifically, her rental subsidy through the Program.

90. Defendants' actions as described above are in violation of the Fourteenth Amendment to the United States Constitution, as made actionable by 42 U.S.C. §1983, and have denied Plaintiff due process right by refusing to grant Plaintiff's reasonable accommodation request.

91. Plaintiff has been injured by the Defendants' discriminatory conduct and has suffered damages as a result.

92. Defendants have acted with malicious intent and/or reckless or callous indifference to Plaintiff's federally protected rights.

93. Accordingly, under 42 U.S.C. §1983, Plaintiff is entitled to punitive damages, compensatory damages, injunctive relief, and reasonable attorneys' fees and costs.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Ms. Krauss demands trial by jury in this action of all issues so triable.

WHEREFORE, Plaintiff respectfully requests this Court to:

A. Assume jurisdiction over this action;

B. Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, enter a judgment declaring that the Defendants, by failing to suspend Plaintiff's voucher term, denying Plaintiff's reasonable accommodation request, and dropping her from the Program's waiting list, violated Plaintiff's right to due process under the Fourteenth Amendment of the United States Constitution, as well as the statutes and regulations governing the housing choice voucher program;

C. Pursuant to 28 U.S.C. § 2202, 42 U.S.C. §§ 1983 and 3613(c), and Fed. R. Civ. P. 65, enter a permanent injunction ordering the Defendants to reinstate Plaintiff's housing choice voucher retroactive to October 2, 2010;

D. Award Plaintiff damages, including actual and compensatory damages, for the losses incurred and emotional distress, mental anguish, humiliation, embarrassment, and inconvenience suffered as a result of the Defendants' discriminatory conduct, pursuant to 42 U.S.C. § 3613(c), 42 U.S.C. § 12133, 29 U.S.C. § 794a(a)(2) and 42 U.S.C. § 1983;

E. Award Plaintiff punitive damages pursuant to 42 U.S.C. § 3613(c) and 42 U.S.C. § 1983;

17

F. Grant Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 3613(c), 42 U.S.C. § 12133, 29 U.S.C. § 794a(b), 42 U.S.C. § 1988, and Fed. R. Civ. P. 54(d), and;

G. Grant such other and further relief as the Court deem just and equitable.

Dated: Newburgh, NY
May 2, 2011

Respectfully submitted,

LEGAL SERVICES OF THE HUDSON VALLEY

*/s/ Lara Kasper-Buckareff*

Lara Kasper-Buckareff, Esq.
Bar ID: LK1974
Jaime S. Samarel, Esq.
Bar ID: JS7819
William T. Flynn, Esq.
Bar ID: WF4651
Legal Services of the Hudson Valley
123 Grand Street
Newburgh, NY  12550
Tel.: (845) 569-9110